THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:16-cv-00268-MR

| | |
|---|---|
| JOHN E. POWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 11].

**I.    PROCEDURAL HISTORY**

The Plaintiff John E. Powell filed an application for a period of disability and disability insurance benefits on August 2, 2012, alleging an onset date of April 1, 2011. [Transcript ("T.") 16]. The Plaintiff later amended his alleged onset date to July 1, 2012. [T. 16, 18, 44-45]. The Plaintiff's claim was denied initially and on reconsideration.  [T. 16, 123, 130].  Upon the Plaintiff's request, a hearing was held on October 22, 2014, before Administrative Law Judge Thaddeus J. Hess ("ALJ Hess").  [T. 16, 40-80].  The Plaintiff testified

at this hearing, as did a vocational expert ("VE"). [Id.]. On January 7, 2015, ALJ Hess issued a decision denying the Plaintiff benefits. [T. 16-34]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-5]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of any Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might

2

accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1,

Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id. In this case, the ALJ's determination was made at the fifth step.

## IV. THE ALJ'S DECISION

In denying the Plaintiff's claim, the ALJ found that the Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2015, and that he has not engaged in substantial gainful activity since the amended alleged onset date of July 1, 2011. [T. 18]. The ALJ then found that the medical evidence established that the Plaintiff has the following severe impairments: diabetes mellitus, asthma, hypertension, obesity, anxiety and major depressive disorder. [Id.]. The ALJ specifically found that the Plaintiff's other claimed conditions, including migraine headaches,

traumatic arthritis of right ankle, allergic rhinitis, chest pain, MRSA infection, gastroesophageal reflux disease ("GERD"), headaches, dizziness, vertigo, left flank pain, back pain, and attention deficit disorder, did not result in any significant functional limitations or were not medically determinable from the record, and were therefore not severe impairments. [T. 18-19]. The ALJ determined that none of Plaintiff's impairments, either singly or in combination, met or equaled a listing. [T. 19]. The ALJ then assessed the Plaintiff's residual functional capacity (RFC) [T. 22-33], finding as follows:

> [T]he [Plaintiff] has the RFC to perform light work as defined in 20 CFR 404.1567(b) except that he can never climb ladders/ropes/scaffolds; can only occasionally climb ramp/stairs, balance, stoop, kneel, crouch and crawl; and must avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery, extreme cold/hear and dust fumes, gases, etc.; [h]e is limited to simple, routine, repetitive tasks with no more than occasional decision making with no more than occasional changes in the work setting and no more than occasional interaction with the general public.

[T. 22]. Based on this RFC, the ALJ then determined that the Plaintiff could not perform any of his past relevant work as a retail sales clerk, cashier or stocker. [T. 33]. Considering the Plaintiff's age, education, work experience, and RFC, the ALJ further concluded that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

5

[Id.]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the alleged onset date through the date of the ALJ's decision. [T. 34].

## V. DISCUSSION[1]

The Plaintiff asserts two assignments of error. First, the Plaintiff argues that the ALJ "failed to properly assess the non-exertional impairments of the [Plaintiff]." [Doc. 10 at 8]. Second, the Plaintiff argues that the ALJ "committed error to the prejudice to [sic] the Plaintiff in his evaluation of the Vocational Expert's testimony." [Id.].

After asserting these two assignments of error, the Plaintiff does not proceed to articulate any analysis or meaningful legal arguments in support thereof. Instead, the Plaintiff makes numerous conclusory assertions of error that do not appear to relate directly to the assignments of error identified.

Members of the Social Security bar, including the Plaintiff's counsel, have been warned repeatedly that this Court will consider only those legal arguments properly set forth in a separate assignment of error. See, e.g., Sanders v. Berryhill, No. 1:16cv236, 2017 WL 3083730, at *3 (W.D.N.C. June 12, 2017) (Howell, Mag. J.), adopted by, 2017 WL 3083261 (W.D.N.C.

---

[1] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

July 19, 2017); Mason v. Berryhill, No. 1:16cv148, 2017 WL 2664211, at *4 (W.D.N.C. May 30, 2017) (Howell, Mag. J.), adopted by, 2017 WL 2662987 (W.D.N.C. June 20, 2017); Demag v. Berryhill, No. 1:15-CV-00229-MR, 2017 WL 927258, at *5 n.5 (W.D.N.C. Mar. 8, 2017) (Reidinger, J.); Woods v. Colvin, No. 1:16cv58, 2017 WL 1196467, at *4 n.2 (W.D.N.C. Feb. 8, 2017) (Howell, Mag. J.) (collecting cases), adopted by, 2017 WL 1190920 (W.D.N.C. Mar. 29, 2017); Armstrong v. Colvin, No. 5:15cv110, 2016 WL 7200058, at *3 n.2 (W.D.N.C. Sept. 2, 2016) (Howell, Mag. J.), adopted by, 2016 WL 6652455 (W.D.N.C. Nov. 9, 2016); McClellan v. Astrue, No. 1:12-CV-00255-MR-DLH, 2013 WL 5786839, at *3 n.2 (W.D.N.C. Oct. 28, 2013) (Reidinger, J.) (adopting Memorandum and Recommendation of Howell, Mag. J.). Once again, this Court instructs counsel to separately set forth each alleged error, cite relevant legal authority, and include a discussion as to how the cited authority supports his arguments.[2]

---

[2] The Court has had issues in the past with members of the Social Security bar using the brief-writing services of a particular paralegal, who is also a disbarred attorney. Many of the cases in which the Court had to admonish counsel regarding the failure to set out separate assignments of error with proper citations to the record and to relevant legal authority were the result of this brief writer's work. The present brief is similar in its deficiencies to the briefs prepared by this particular brief writer. If Plaintiff's counsel chooses to engage the services of a brief writer to assist him, counsel is strongly advised to review the briefs prior to submission and ensure that they comply with the requirements of this Court.

### A. The ALJ'S Assessment of Non-Exertional Impairments

In his first assignment of error, the Plaintiff asserts that the ALJ erred by failing to "properly assess the non-exertional impairments of the [Plaintiff]." [Id.]. The Plaintiff, however, does not identify any non-exertional impairments that the ALJ failed to assess. The thrust of the Plaintiff's argument appears to be that the ALJ failed to give sufficient weight to the conclusions of Dr. Roy P. Gallinger, MD, who was the Plaintiff's treating psychiatrist during his admission at the behavioral health unit of Haywood Regional Medical Center in October 2010. The Plaintiff argues that this opinion should have been given "great weight", [Doc. 10 at 12], but rather was given "little weight" [id.] or no weight [id. at 11].

Dr. Gallinger noted the Plaintiff harboring suicidal ideation and diagnosed him with a major depressive disorder in October 2010. [T. 312, 314]. Even though the Plaintiff's argument is far from clear, it appears that he asserts that the ALJ disregarded this evidence without adequately explaining why he did so. [Doc. 10 at 12-13 ("these types of conclusory findings by an ALJ make meaningful review by this Court impossible) (citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) and Fox v. Colvin, 632 F. App'x 750 (4th Cir. Dec. 17, 2015)]. Dr. Gallinger's opinion, however, preceded the Plaintiff's alleged onset date by nearly two years. Moreover,

8

as the ALJ noted, the Plaintiff himself recounted in later examinations that "[h]e denied having had active suicidal thoughts, intent or plan for suicide since 2010." [T. 25]. Even at the Plaintiff's discharge by Dr. Gallinger in 2010, he assessed the Plaintiff as "in stable condition, not depressed, anxiety adequately controlled." [T. 314]. As such, the ALJ adequately explained why the earlier Gallinger opinion would be entitled to little weight, as it did not concern the Plaintiff's condition during the relevant period under consideration.[3]

The Plaintiff argues that the ALJ compounded his error by also giving little weight to the opinion of Veronica McKay, LCSW, who noted the Plaintiff's suicidal and depressive condition. The Plaintiff acknowledges that as a LCSW, McKay may not be considered an "acceptable medical source able to establish the existence of a mental impairment." [Doc. 10 at 13 (citing 20 C.F.R. § 404.1513(a)]. Moreover, McKay's testimony predates even Dr. Gallinger's assessment, which was long before the Plaintiff's onset date.[4]

---

[3] The ALJ specifically acknowledged Dr. Gallinger's October 2010 opinion and cites where it fits in the chronology of the Plaintiff's treatment. Moreover, the ALJ found that Plaintiff has severe impairments including major depressive disorder. [T. 18].

[4] The Plaintiff obliquely implies that the ALJ further erred by adopting the opinion of state SDM Alicia Madden in lieu of Dr. Gallinger's opinion. [Id. at 11]. This is a tortured reading of the ALJ's decision. The reference to the SDM opinion pertains to whether the Plaintiff's impairments meet or equal a listing [T. 19], and not any issue addressed by Dr. Gallinger.

As such, the ALJ adequately demonstrated the weight given to the Gallinger and McKay opinions were given little weight. For these reasons, this assignment of error is overruled.

### B. Evaluation of Vocational Expert Testimony

The Plaintiff asserts as his second assignment of error that the ALJ "committed error to the prejudice to [sic] the Plaintiff in his evaluation of the Vocational Expert's testimony." [Doc. 10 at 8]. The Plaintiff cites to unadorned excerpts of the ALJ's hypotheticals and the VE's testimony before arguing, without meaningful explanation, that the ALJ's "evaluation of the vocational expert's testimony is in the heartland of the errors described by the U.S. Court of Appeals in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015)." [Id. at 14-17]. The Plaintiff does not provide any articulation or legal analysis as to how the ALJ's decisions is allegedly inconsistent with Mascio. Instead, the Plaintiff makes conclusory assertion and cites legal authority with no analysis or explanation. [Id. at 17-18]. In lieu of identifying any specific limitations not considered by the ALJ, citing to any evidence in the record, or providing any legal analysis, the Plaintiff ends his brief as follows:

> The errors in evaluating the mental health conditions of the Plaintiff, described in Section 1 above in this argument are also pertinent to the evaluation of the errors in examining the vocational expert.[5]

---

[5] "Section 1" appears to refer to the multiple arguments made by Plaintiff in support of his

[Id. at 18]. The Plaintiff, however, provides no clarity as to what arguments he has previously made or how they are pertinent to his second assignment of error.

In questioning a VE, an ALJ must pose hypothetical questions that are based upon a consideration of all relevant evidence of record regarding the claimant's impairment. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005); English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993).

Here, the ALJ presented the following hypothetical to the VE:

> Let's assume a younger individual with at least a high school education, claimant has more than that, but at least a high school education. Work experience as we just discussed and for hypothetical question number one, exertionally, our starting point is light with never climbing a ladder, rope, or scaffold. Occasional for climbing a ramp or stairs. As well as occasional for balancing, stooping, kneeling, crouching, and crawling. All of those are occasional. Avoid concentrated exposure for workplace hazards such as unprotected heights and moving machinery. Avoid concentrated exposure to extreme cold and extreme heat. Avoid concentrated exposure to dust, fumes, gases, et[c.] I call them the respiratory irritants, but dust, fumes, gases. Simple, routine, repetitive tasks with occasional decision making. Occasional changes in the work setting. And occasional interaction with the general public. That's hypothetical question number one. Could such an individual perform any of the past jobs we've talked about?"

---

first assignment of error.

[T. 76-77]. The VE responded in the negative. [T. 77]. The ALJ then asked if there were other jobs available with those limitations. [Id.] The VE responded in the affirmative, indicating that the following jobs would be available: office helper (15,500 jobs in North Carolina and at least 185,000 jobs in the United States economy); box sealer inspector (6,500 jobs in North Carolina and at least 400,000 jobs in the United States economy); and cloth folder (2,900 jobs in North Carolina and at least 250,000 jobs in the United States economy). [Id.].

The ALJ then posed a hypothetical with the same limitations but at the sedentary exertional level. [Id.] The VE again responded in the affirmative, indicating that the following jobs would be available: order clerk for food and beverage (3,300 jobs in North Carolina and at least 160,000 jobs in the United States economy); weaver/defect clerk (2,300 jobs in North Carolina and at least 125,000 jobs in the United States economy); and charge account clerk (2,600 jobs in North Carolina and at least 125,000 jobs in the United States economy). [T. 78].

The second hypothetical posed by the ALJ properly sets forth each of the limitations identified by the ALJ in the RFC. The VE in turn responded that there were still jobs in substantial numbers both in the regional and national economy that a person with those limitations could perform. The

12

Plaintiff has not identified any specific limitation that is supported by the record but that was not addressed in the RFC.  Further, the Plaintiff does not contend that the VE's testimony in response to the ALJ's hypothetical was in any way erroneous.  For these reasons, the Court concludes that the ALJ did not err in his evaluation of the VE's testimony.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 11] is **GRANTED**; the decision of the Commissioner is **AFFIRMED**; and this case is hereby **DISMISSED**.  A judgment shall be entered contemporaneously herewith.

**IT IS SO ORDERED.**

Signed: September 29, 2017

Martin Reidinger
United States District Judge